UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CARR, | No. 2:17-cv-01539-JAM-AC |
| Plaintiff, | |
| v. | **ORDER GRANTING LKQ'S MOTION TO DISMISS** |
| AUTONATION INC., et. al. | |
| Defendants. | |

More than twenty years ago, Plaintiff James Carr ("Plaintiff" or "Carr") formulated a business plan (the "Business Plan") to "revolutionize" the automobile-wrecking industry into a profitable system. Compl. ¶¶ 2-3, ECF No. 1-2. He alleges that defendant AutoNation, Inc. ("AutoNation") and others wrongfully stole his ideas from the Business Plan to open a new highly profitable company called LKQ Corporation ("LKQ"). After finding out about LKQ in October 2015, Plaintiff investigated and researched LKQ and, in June 2017, initiated this lawsuit, alleging Misappropriation of Trade Secrets against all defendants and Breach of Contract Implied in Fact against AutoNation and defendant Wayne Huizenga ("Huizenga"). Compl. LKQ moves to

1

dismiss the sole claim against it for trade secret misappropriation. Mem., ECF No. 23. Plaintiff opposes. Opp'n, ECF No. 30. For the reasons explained below, the Court grants LKQ's motion to dismiss without prejudice.[1]

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff owned and operated an automobile-wrecking business in Placerville, California between 1985 and 1995. Compl. ¶ 2. Based on his experience and background as a college-educated certified public accountant, Plaintiff created the Business Plan to transform the automobile-wrecking industry into an efficient, interconnected, and highly profitable national system capable of synchronizing the supply of wrecked cars with the demand of recycled auto parts. Compl. ¶¶ 2-3. Around November 1995, Plaintiff sent letters to approximately 10 companies and individuals to gauge their interest in being a business partner and capital source. Compl. ¶ 4.

One of two respondents asked for the Business Plan and then, upon Plaintiff's request, returned the Business Plan after indicating they were not interested. Compl. ¶ 5. AutoNation, owned by well-known businessman Huizenga, was the other company that responded. Compl. ¶ 4. Specifically, between November 1995 and January 1996, Jeff Davis ("Davis") of AutoNation called Plaintiff to ask some follow-up questions and asked for the

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 21, 2017. In deciding this motion, the Court takes as true all well-pleaded facts in the operative complaint.

2

Business Plan. Compl. ¶¶ 6, 8. Plaintiff sent Davis the Business Plan, but without any confidentiality agreement or non-disclosure agreement. Compl. ¶¶ 8, 42. Davis then traveled to California to meet with Plaintiff in person and tour approximately five automobile wrecking yards throughout Northern California. Compl. ¶ 9. Plaintiff claims that, during that visit, he made clear to Davis that he "contemplated being compensated or otherwise involved should Huizenga, AutoNation, or any affiliates choose to move forward with the idea." Id.

After their visit, Davis called Plaintiff and told him that Huizenga and AutoNation were not interested in pursuing the Business Plan. Compl. ¶ 10. Plaintiff asked Davis to return the Business Plan and he did. Id. Then Plaintiff left the automobile-wrecking industry and moved on to other ventures. Id. He also did not follow developments in the automobile-wrecking industry and did not keep in touch with people in the industry. Id.

At a barbeque almost twenty years later, Plaintiff told a new acquaintance who owned a Northern California auto parts recycler that Plaintiff once had a billion dollar business idea. Compl. ¶ 11. He added that he pitched it to the well-known Huizenga and AutoNation. Id. The new acquaintance expressed shock and told Plaintiff that a successful company called LKQ Corporation ("LKQ") had been formed with Huizenga's involvement and that it was tremendously successful. Id.

Plaintiff did further research on the internet to learn that Donald Flynn ("Flynn"), a former executive of Waste Management who had no auto-wrecking industry experience, founded LKQ.

3

Compl. ¶¶ 12, 45. Waste Management was founded by Huizenga. Compl. ¶ 5. Another former Waste Management executive, Dean Buntrock ("Buntrock"), Huizenga and AutoNation were founding backers of LKQ. Compl. ¶ 12. A number of other former Waste Management executives also went to work for LKQ. Compl. ¶ 13. Further, one key employee has worked for both LKQ and AutoNation. Compl. ¶ 14. And Plaintiff discovered that AutoNation owned significant shares of LKQ until 2003. Compl. ¶ 17.

After completing his initial research, Plaintiff filed suit against Defendants AutoNation, Huizenga, Davis, and LKQ in El Dorado County Superior Court, alleging misappropriation of trade secrets against all Defendants and breach of contract implied in fact against AutoNation and Huizenga. Compl. ¶ 53. Defendants collectively removed the case to this Court under 28 U.S.C. § 1441. Not. of Removal, ECF No. 1. On September 19, 2017, the Court approved the parties' stipulation to dismiss Defendants Huizenga and Davis without prejudice. Order, ECF No. 22.

## II. OPINION

### A. Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Plaintiff must plead two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)). Misappropriation under the CUTSA includes the acquisition of a trade secret from another person. Cal. Civ. Code § 3426.1(b).

4

But "[a]n 'acquirer' is not liable under the [CUTSA] unless he knew or had reason to know that the trade secret was improperly disclosed." Ajaxo v. E*Trade Grp., Inc., 135 Cal. App. 4th 21, 66 (2005) (citing Cal. Civ. Code § 3426.1(b)); see also MedioStream, Inc. v. Microsoft Corp., 869 F.Supp.2d 1095, 1114 (N.D. Cal. 2012) (granting motion to dismiss misappropriation claim because plaintiff failed to plead "facts demonstrating that [defendant] knew or had reason to know that any information it acquired from Sonic was improperly acquired or disclosed"). And it is not "appropriate to direct a jury to impute an agent's knowledge of a secret to the principal." Droeger v. Welsh Sporting Goods, 541 F.2d 790, 792 (9th Cir. 1976) (holding it was reversible error for the trial court to instruct the jury that it was no defense for the defendant that an agent of the defendant did not inform other employees of plaintiff's concept). Trade secret plaintiffs may prove "misappropriation by circumstantial as well as direct evidence." UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co., 617 F. Supp. 2d 938, 944 (N. D. Cal. 2007) (internal citations omitted).

In this case, Plaintiff must adequately plead that AutoNation wrongfully obtained the Business Plan and that LKQ knew or had reason to know this. Ajaxo, 135 Cal. App. 4th at 21. He does not.

Plaintiff conclusively pleads that "LKQ acquired Plaintiff's trade secrets—either the Business Plan itself or its contents—knowing or with reason to know that they were acquired through improper means" because LKQ founding officials lacked

auto-wrecking industry experience and Huizenga and AutoNation were founding backers. Compl. ¶¶ 44, 45, 47. But these conclusive allegations do not explain how LKQ got the Business Plan (or its contents) from AutoNation, and what specifically would have caused LKQ to know or have reason to know that AutoNation's possession of the Business Plan was wrongful. Charging LKQ with knowledge of the confidentiality of the Business Plan is especially difficult when it has no markings of confidentiality and no non-disclosure agreement was in place. Compl. ¶ 42.

Plaintiff argues that knowledge of AutoNation's allegedly wrongful trade secret acquisition should be imputed to LKQ. Opp'n at 10-11. To support this argument, Plaintiff cites a number of cases and treatises to argue that the knowledge to be imputed to a corporation is the sum total of the knowledge possessed by the corporation's agents, employees, and officials. Opp'n at 10. Even if this authority is valid, it does not justify imputing knowledge to LKQ. The law that Plaintiff has provided does not permit imputing knowledge from investors or customers (Huizenga and AutoNation) to the company in which they invest or from which they buy products (LKQ).[2] Further, as noted above, it is not appropriate to impute an agent's knowledge of a trade secret to the principal. See Droeger, 541 F.2d at 792.

---

[2] Plaintiff argues in the Opposition that "AutoNation remained involved, had a seat on LKQ's board, and was LKQ's major customer." Opp'n at 11. The Complaint does not allege that AutoNation had a seat on LKQ's board and the Court may not consider this allegation. See generally Compl.

Finally, to support his argument that he has adequately pleaded LKQ's liability, Plaintiff also relies on two out-of-circuit cases that lack precedential value in this Court. Opp'n at 5-6. Those cases also are inapposite because of their distinguishable facts and application of laws not at issue in this case. (Accenture Global Servs. GMBH v. Guideware Software, Inc., 581 F.Supp. 2d 654 (D. Del. 2008) dealt with Delaware's trade practices statute and patent infringement; and Down Corning Corp. v. RSI Silicon Prods. LLC, No. 10-11226-BC, 2010 WL 4723428, at *4 (E.D. Mich. Nov. 15, 2010) applies Michigan's misappropriation law.)

While the in-circuit cases that Plaintiff cites are authoritative, they also are of little help given that the facts are distinguishable. Droeger, 541 F.2d at 792 and Ajaxo, 135 Cal. App. 4th at 66 (1) involved trial records showing direct communications between those plaintiffs and defendants relating to the relevant trade secrets and (2) the plaintiffs took explicit written measures to protect the confidentiality of the alleged trade secrets. Here, Plaintiff never spoke to anyone from LKQ and does not allege he took any written measures to protect the confidentiality of the Business Plan. See generally Compl.

Plaintiff has failed to adequately plead that LKQ knew or had reason to know that the Business Plan was improperly disclosed. Accordingly, the Court grants LKQ's motion to dismiss Plaintiff's trade secret misappropriation claim.

///

///

B. Leave to Amend

Courts dismissing under Federal Rule of Civil Procedure 12(b)(6) have discretion to permit amendment, and there is a strong presumption in favor of leave to amend. Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear... that the complaint could not be saved by amendment." Id. at 1052.

The Court is not completely convinced that further amendment would be futile and will give Plaintiff one more opportunity to plead a legally sufficient trade secret misappropriation claim against LKQ. The Court cautions Plaintiff to avoid adding conclusory allegations or new theories of liability unsupported by sufficient facts.

### III. ORDER

For the reasons set forth above, the Court GRANTS LKQ's motion to dismiss Plaintiff's trade secret misappropriation claim with leave to amend. Should Plaintiff elect to file a First Amended Complaint against LKQ for trade secret misappropriation, he must do so within twenty (20) days of this order. Defendant's responsive pleading to a First Amended Complaint is due twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: January 3, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

8