UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CARR, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>AUTONATION INC., et. al.<br><br>    Defendants. | No. 2:17-cv-01539-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AUTONATION INC.'S MOTION TO DISMISS** |

More than twenty years ago, Plaintiff James Carr ("Plaintiff" or "Carr") formulated a business plan (the "Business Plan") to "revolutionize" the automobile-wrecking industry into a profitable system. Compl. ¶¶ 2-3, ECF No. 1-2. He alleges that Defendant AutoNation, Inc. ("AutoNation") and others wrongfully stole his ideas from the Business Plan to open a new highly profitable company called LKQ Corporation ("LKQ"). After finding out about LKQ in October 2015, Plaintiff investigated and researched LKQ and, in June 2017, initiated this lawsuit, alleging Misappropriation of Trade Secrets against all defendants and Breach of Contract Implied in Fact against AutoNation and

1

defendant Wayne Huizenga ("Huizenga"). Compl. AutoNation moves to dismiss both claims against it. Mem., ECF No. 24. Plaintiff opposes. Opp'n, ECF No. 29. For the reasons explained below, the Court grants AutoNation's motion to dismiss the trade secret misappropriation claim without prejudice and denies the motion to dismiss the implied contract claim.[1]

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff owned and operated an automobile-wrecking business in Placerville, California between 1985 and 1995. Compl. ¶ 2. Based on his experience and background as a college-educated certified public accountant, Plaintiff created the Business Plan to transform the automobile-wrecking industry into an efficient, interconnected, and highly profitable national system capable of synchronizing the supply of wrecked cars with the demand of recycled auto parts. Compl. ¶¶ 2-3. Around November 1995, Plaintiff sent letters to approximately 10 companies and individuals to gauge their interest in being a business partner and capital source. Compl. ¶ 4.

One of two respondents asked for the Business Plan and then, upon Plaintiff's request, returned the Business Plan after indicating they were not interested. Compl. ¶ 5. AutoNation, owned by well-known businessman Huizenga, was the other company that responded. Compl. ¶ 4. Specifically, between November 1995 and January 1996, Jeff Davis ("Davis") of AutoNation called

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 21, 2017. In deciding this motion, the Court takes as true all well-pleaded facts in the operative complaint.

2

| | |
|---|---|
| 1 | Plaintiff to ask some follow-up questions and asked for the |
| 2 | Business Plan.  Compl. ¶¶ 6, 8.  Plaintiff sent Davis the |
| 3 | Business Plan, but without any confidentiality agreement or non- |
| 4 | disclosure agreement.  Compl. ¶¶ 8, 42.  Davis then traveled to |
| 5 | California to meet with Plaintiff in person and tour |
| 6 | approximately five automobile wrecking yards throughout Northern |
| 7 | California.  Compl. ¶ 9.  Plaintiff claims that, during the |
| 8 | visit, he made clear to Davis that he "contemplated being |
| 9 | compensated or otherwise involved should Huizenga, AutoNation, or |
| 10 | any affiliates choose to move forward with the idea."  Id. |

After their visit, Davis called Plaintiff and told him that Huizenga and AutoNation were not interested in pursuing the Business Plan.  Compl. ¶ 10.  Plaintiff asked Davis to return the Business Plan and he did.  Id.  Then Plaintiff left the automobile-wrecking industry and moved on to other ventures.  Id.  He did not follow developments in the automobile-wrecking industry and did not keep in touch with people in the industry.  Id.

At a barbeque almost twenty years later, Plaintiff told a new acquaintance who owned a Northern California auto parts recycler that Plaintiff once had a billion dollar business idea involving the automobile-wrecking industry.  Compl. ¶ 11.  He added that he pitched it to Huizenga and AutoNation.  Id.  The new acquaintance expressed shock and told Plaintiff that a successful company called LKQ Corporation ("LKQ") had been formed with Huizenga's involvement and that it was tremendously successful.  Id.

Plaintiff did further research on the internet to learn that

Huizenga's business associate founded LKQ and that Huizenga and AutoNation were founding backers. Compl. ¶ 12. And Plaintiff discovered that AutoNation owned significant shares of LKQ until 2003. Compl. ¶ 17.

After completing his initial research, Plaintiff filed suit against Defendants AutoNation, Huizenga, Davis, and LKQ in El Dorado County Superior Court, alleging misappropriation of trade secrets against all Defendants and breach of contract implied in fact against AutoNation and Huizenga. Compl. ¶ 53. Defendants collectively removed the case to this Court under 28 U.S.C. § 1441. Not. of Removal, ECF No. 1. On September 19, 2017, the Court approved the parties' stipulation to dismiss Defendants Huizenga and Davis without prejudice. Order, ECF No. 22.

## II. OPINION

### A. Statute Of Limitations

Trade secret misappropriation claims brought under the California Uniform Trade Secrets Act ("CUTSA") have a three year statute of limitations. Cal. Civ. Code § 3426.6. And the three year limitation begins to run from the time the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. Id.

#### 1. Plaintiff's Entitlement To Tolling

"Generally, an action may not be dismissed at the pleading stage based on the statute of limitations 'unless it is clear from the face of the complaint that the statute has run and that no tolling is possible.'" McMenemy v. Colonial First Lending Grp., Inc., No. 2:14-CV-1482 JAM-AC, 2015 WL 1926965, at *2 (E.D.

Cal. Apr. 15, 2015) (citing Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 2011 WL 1044899, at *3 (N.D. Cal. Mar. 23, 2011) (internal citation omitted)); see also Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberty, would not permit the plaintiff to prove that the statute was tolled.") Whether a plaintiff is entitled to tolling based on delayed discovery is usually a question of fact for the jury, unless the uncontradicted facts are susceptible to only one legitimate inference. McMenemy, 2015 WL 1926965, at *2 (citing Kline v. Turner, 87 Cal. App. 4th 1369, 1374 (2001)).

To avail itself of delayed discovery tolling, a plaintiff must plead facts showing (1) the time and manner of discovery and (2) the inability to have made an earlier discovery despite reasonable diligence. McMenemy, 2015 WL 1926965, at *2 (citing E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal. App. 4th 1308, 1320 (2007) and Rey v. OneWest Bank, FSB, 2:12-CV-02078 MCE-GGH, 2013 WL 127839, at *5 (E.D. Cal. Jan. 9, 2013)). The burden is on the plaintiff to show diligence and conclusory allegations will not withstand a motion to dismiss. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005). But the plaintiff's duty to diligently investigate is only triggered when the plaintiff "has reason to suspect an injury and some wrongful cause." McMenemy, 2015 WL 1926965, at *2 (citing E-Fab, Inc., 153 Cal. App. 4th at 1319).

Here, AutoNation got a copy of Plaintiff's Business Plan and corresponded with him about it in February 1995. Plaintiff

5

alleges that his Business Plan was used to open LKQ in 1998, 19 years before Plaintiff filed his complaint. Compl. ¶¶ 8, 12. Given that the applicable statute of limitations is three years, Cal. Civ. Code § 3426.6, the Court must dismiss Plaintiff's CUTSA claim unless the Court determines Plaintiff is entitled to tolling based on delayed discovery of the facts constituting the alleged trade secret misappropriation.

Plaintiff has alleged that he had no reason to suspect any wrongdoing on AutoNation's part until October 2015, when he learned at a barbecue about LKQ's formation with Huizenga and AutoNation's involvement. Compl. ¶ 11. Plaintiff further alleges that he had "no reason to suspect Defendants had indeed pursued Plaintiff's plan without his knowledge" because he believed Davis when Davis said AutoNation would not be pursuing the Business Plan. Compl. ¶ 32. These allegations plausibly show that Plaintiff had no reason to suspect any injury or that AutoNation would do anything wrongful. Accordingly, whether Plaintiff's duty to diligently investigate was actually triggered is a factual issue that the Court cannot resolve from the pleadings alone. See McMenemy, 2015 WL 1926965, at *2 (citing Kline, 87 Cal. App. 4th at 1374 and E-Fab, Inc., 153 Cal. App. 4th at 1319).

In arguing that Plaintiff's allegations do not suffice to toll the statute of limitations, AutoNation relies on Goldberg v. Cameron, 482 F. Supp. 2d 1136 (N.D. Cal. 2007). AutoNation contends that Goldberg is "on all fours" with Plaintiff's case. Mem. at 4. It is not. The allegedly stolen copyright in Goldberg was one of the most well-known entertainment franchises

6

of the 1980's and 1990's: The Terminator trilogy.  The Court in Goldberg found that, because "The Terminator movies have been exceedingly popular both domestically and abroad. . . . [e]ven attempting to eschew all electronic media, it is unreasonable to assert that plaintiff had zero exposure to The Terminator movies. . . ."  482 F. Supp. 2d at 1148.  Finding a two-decade withdrawal from society beyond the realm of reasonable conduct, the Goldberg court also refused to believe Plaintiff's 20-year, self-imposed yoga exile.  Id. at 1149.

But here, the existence of LKQ is not as notorious as The Terminator movies and Plaintiff has pleaded specific facts explaining why he did not have reason to suspect that AutoNation allegedly stole his idea and created LKQ:

- LKQ was formed under a different name than anyone or anything Plaintiff dealt with when initially pitching his idea to AutoNation.
- The LKQ IPO did not occur until 2003, and Plaintiff did not know about that because he had left the auto-parts industry.
- LKQ was given a name that, unlike Huizenga's other ventures (e.g. Blockbuster, Waste Management, AutoNation) did not clearly convey the nature of the company's business.

Compl. ¶¶ 32-36.

To support its argument that Plaintiff should have known about his potential claim earlier, AutoNation also cites Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803-04 (2005) and McKelvey v. Boeing N. Am., 74 Cal. App. 4th 151, 161 (1999). Mem. at 9-10.  AutoNation's reliance on those cases is misplaced. In Fox, the plaintiff was immediately aware of her injury and was hospitalized shortly after the surgery giving rise to her claim.

7

35 Cal. App. 4th at 803-04. In McKelvey, the plaintiffs were aware of their injury but not the full nature of the injuries or the defendant's responsibilities for those injuries. 74 Cal. App. 4th at 161. Here, Plaintiff has sufficiently alleged that he had no reason to suspect AutoNation would steal his idea after Davis told him that AutoNation was not pursuing his Business Plan. Compl. ¶ 32.

In further support of its argument that Plaintiff was on constructive notice of his potential claim, AutoNation also requests the Court to take judicial notice of numerous newspaper articles and public documents.[2] Mem. at 8-9. Plaintiff cites to public documents in his Complaint, belying his assertion that AutoNation's potential wrongdoing occurred "in secret." See Compl. ¶¶ 12-18. However, even if all of these public documents existed before the 2015 barbecue, whether that gave Plaintiff constructive notice of his claim and he should have known about the alleged trade secret misappropriation are questions of fact. See Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1041 (9th Cir. 2000) (finding there was a "genuine issue of material fact as to whether" the plaintiffs knew or had reason to know about the actual or impending infringement of their alleged copyrights before 1994 even though defendants were "openly and continuously" conducting a national distribution of the allegedly infringing material).

---

[2] The Court denies AutoNation's Request for Judicial Notice, ECF No. 25, because the documents referenced therein are either unnecessary for the disposition of AutoNation's motion or are documents that may not be judicially noticed to the extent that AutoNation relies on them for the truth of the contents therein, e.g. Exhibits A-O and K.

1    AutoNation also argues that the public filings about LKQ put
2    Plaintiff on constructive notice about his potential claim,
3    citing Wang v. Palo Alto Networks Inc., No. C 121095579 WHA, 2014
4    WL 1410346 (N.D. Cal. Apr. 11, 2014), In Cmty. Cause v.
5    Boatwright, 124 Cal. App. 3d 888 (1981), and Baker v. Beech
6    Aircraft Corp., 96 Cal. App. 3d 321, 327-28 (1979).  These cases
7    are inapposite.

8         In Wang, the Court applied the rule that publication of
9    patents puts those practicing in the same field and prosecuting
10   their own patent applications in that field on notice of all the
11   contents of the publication.  Wang, 2014 WL 1410346, at *6.  But
12   this rule was limited to the patent context and is not a "ringing
13   universal rule of law for purposes of commencing a limitations
14   period."  Id.  The Cal. Court of Appeal reviewed Boatwright and
15   clarified that no case "suggest[s] the existence of public
16   records precludes the application of the delayed discovery
17   doctrine as a matter of law."  Prudential Home Mtg. Co. v. Sup.
18   Ct., 66 Cal. App. 4th 1236, 1247 (1998).  In Baker, the Court of
19   Appeal did not consider the issue of constructive notice where
20   the plaintiff has no reason to suspect injury because the Baker
21   plaintiffs (families of plane crash victims) knew of the injury
22   immediately.  96 Cal. App. 3d at 332.  In short, the cases relied
23   upon by AutoNation fail to negate Plaintiff's argument that he
24   has pleaded sufficient facts for delayed discovery.

25             2.   Prejudice to Defendant

26        AutoNation argues that allowing Plaintiff to pursue his
27   complaint would prejudice AutoNation in the way the statute of
28   limitations is designed to prevent.  Mem. at 6-7.  This argument

9

1  is also unpersuasive given that none of the cases cited involve
2  dismissing pleadings based on prejudice.  See Gutierrez v. Mofid,
3  39 Cal. 3d 892, 903 (1985) (summary judgment); Bollinger v. Nat'l
4  Fire Ins. Co., 25 Cal. 2d 399, 411-12 (1944) (reversing lower
5  court's grant of demurrer); Duty v. Abex Corp., 214 Cal. App. 3d
6  742, 746, 753 (1989) (reversing grant of directed verdict at
7  trial).  Statute of limitations arguments based on alleged
8  prejudice are similar to a defense of laches, which are typically
9  resolved at trial.  See Duty, 214 Cal. App 3d at 748-49; Kling,
10 225 F.3d at 1041.  Thus, the Court cannot resolve the prejudice
11 argument at this early stage of the litigation.

   Plaintiff has sufficiently pleaded facts to support the
reasonableness of his delayed discovery of the alleged trade
secret misappropriation.  The Court denies AutoNation's motion to
dismiss the claim based on a violation of the statute of
limitations.

   B.   Plaintiff's Efforts To Maintain The Secrecy Of His
        Business Plan

   AutoNation argues that Plaintiff's trade secret
misappropriation claim also fails because he has not alleged
sufficiently reasonable efforts to maintain the secrecy of the
Business Plan.  Mem. at 12.  The Court agrees.

   Under the CUTSA, a trade secret requires "efforts that are
reasonable under the circumstances to maintain its secrecy."
Cal. Civ. Code § 3426.1.  Whether information is secret is "a
relative concept and requires a fact-intensive analysis."
SkinMedica, Inc. v. Histogen Inc., 869 F.Supp.2d 1176, 1194 (S.

D. Cal. 2012) (internal citations and quotation marks omitted).[3]
If an individual discloses his trade secret to others who are
under no obligation to protect the confidentiality of the
information, or otherwise publicly discloses the secret, his
property right is extinguished. Altavion, Inc. v. Konica Minolta
Sys. Lab., Inc., 226 Cal. App. 4th 26, 57 (2014) (internal
citation and quotation marks omitted); see also SkinMedica, 869
F.Supp.2d at 1194 ("[I]t follows that an unprotected disclosure
of the holder's secret terminates the existence of a trade
secret.") (internal citation omitted).

Whether the recipient of the purported trade secret has a
duty to maintain secrecy can be implied from the circumstances.
Direct Tech., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1070 (9th
Cir. 2016) ("Where the facts show that a disclosure is made in
order to further a particular relationship, a relationship of
confidence may be implied, e.g. disclosure to a prospective
purchaser to enable him to appraise the value of the secret[.]")
(internal citation and quotation marks omitted).

Here, Plaintiff has not alleged sufficient facts
demonstrating that he took reasonable steps to protect the
secrecy of the Business Plan. Plaintiff concedes he did not
issue a non-disclosure agreement before sending the Business Plan
to AutoNation. Opp'n at 14. Plaintiff tries to justify this

---

[3] Plaintiff claims "[w]hether a trade secrets plaintiff has taken steps to preserve secrecy that are appropriate under the circumstances can only be determined in the summary judgment stage (let alone the pleading[s] stage) in an 'extreme case.'" Opp'n at 11. But that proposition relies on an unpublished Ninth Circuit case that has no precedential value. U.S. Ct. of App. 9th Cir. Rule 36-3.

conduct by arguing that he "was not concerned that AutoNation would take issue with the substance of the NDA, but rather that any hassle would cause [sic] to lose interest in the individual businessman trying to sell his vision." Opp'n at 14. While this may explain why Plaintiff acted the way he did, it does not explain how Plaintiff's inaction imposed a duty on AutoNation to keep the Business Plan secret.

The Complaint also lacks sufficient facts which would permit the Court to determine whether Plaintiff's alleged efforts to keep the Business Plan secret were reasonable. Plaintiff alleges in a conclusory manner that "Plaintiff believed the circumstances made clear to the recipients that their receipt of the Business Plan and Plaintiff's further input and expertise was conditioned upon their agreement not to use or further disclose the Business Plan without Plaintiff's consent." Compl. ¶ 42. Plaintiff does not plead what those specific circumstances were or how they relate to his efforts to keep the Business Plan secret.

Plaintiff also alleges that he "sought to further protect his Business Plan and confirm the parties' understanding" about the alleged secrecy of the Business Plan by asking the recipients to return the Business Plan. Compl. ¶ 42. But Plaintiff does not allege how this would have communicated to AutoNation that his Business Plan was secret when he had not asserted any secrecy until then. Compl. ¶¶ 4-6.

To support his argument that he has sufficiently pleaded the reasonableness of the efforts he took to maintain the secrecy of the Business Plan, Plaintiff cites to two Fifth Circuit cases that lack precedential value in this Court. Opp'n at 12.

12

Plaintiff also cites <u>Montz v. Pilgrim Films & TV, Inc.</u>, 649 F.3d 975 (9th Cir. 2001) and <u>Gunther-Wahl Prods., Inc. v. Mattel, Inc.</u>, 104 Cal. App. 4th 27 (2002)—two cases from outside the CUTSA arena—to argue that the alleged circumstances imposed a duty of confidentiality on AutoNation. Opp'n at 12-13. In <u>Montz</u> and <u>Gunther-Wahl Prods.</u>, those courts examined whether the circumstances showed an implied contract, not whether a party had a duty to keep a business idea secret. 649 F.3d at 979; 104 Cal. App. 4th at 42-43. The cases are neither applicable nor persuasive.

Because Plaintiff has failed to allege the reasonable steps he took to maintain the secrecy of the Business Plan, his trade secret misappropriation claim fails and must be dismissed. <u>See</u> <u>Altavion, Inc.</u>, 226 Cal. App. 4th at 57.

### C. Breach Of Contract Implied By Fact

AutoNation does not argue against the merits of Plaintiff's breach of implied contract claim. <u>See generally</u> Mem. Rather, AutoNation again cites <u>Goldberg</u> (and no other case) to argue that Plaintiff has not adequately pleaded facts to toll the two-year statute of limitations on this claim. Mem. at 15. The Court has already indicated above that it does not find <u>Goldberg</u> to be on all fours here. The Court's tolling analysis above applies for this claim as well.

In addition, whether Plaintiff exercised reasonable diligence in discovering AutoNation's alleged breach is "a question of fact for the court or jury to decide." <u>April Enter., Inc. v. KTTV</u>, 147 Cal. App. 3d 805, 832-33 (1983) (internal quotation marks and citation omitted). And a plaintiff is on

13

inquiry notice when he suspects or should suspect that their injury was caused by wrongdoing. <u>NBC Universal Media, LLC v. Sup. Ct.</u>, 225 Cal. App. 4th 1222, 1234, 1236 (2014) (finding plaintiffs were on inquiry notice from the date they sent an email asking whether their idea for a show was stolen). But, as the Court concluded above, Plaintiff has adequately pleaded that he had "no reason to suspect Defendants had indeed pursued Plaintiff's plan without his knowledge" because he believed Davis when he said AutoNation would not be pursuing the business idea. Compl. ¶ 32. Whether the existence of publicly available documents about LKQ's origins show that Plaintiff should have suspected wrongdoing is a factual issue the Court cannot resolve at this stage. Accordingly, the Court denies AutoNation's motion to dismiss the implied contract claim.

### D. <u>Leave to Amend</u>

Courts dismissing claims under Federal Rule of Civil Procedure 12(b)(6) have discretion to permit amendment, and there is a strong presumption in favor of leave to amend. <u>Eminence Cap., LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051-52 (9th Cir. 2003). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear. . . that the complaint could not be saved by amendment." <u>Id.</u> at 1052 (internal citation omitted).

The Court is not completely convinced that further amendment would be futile and will give Plaintiff an opportunity to plead a legally sufficient trade secret misappropriation claim against AutoNation.

///

### III. ORDER

For the reasons set forth above, the Court DENIES AutoNation's motion to dismiss Plaintiff's implied contract claim and GRANTS AutoNation's motion to dismiss Plaintiff's trade secret misappropriation claim with leave to amend. Should Plaintiff elect to file a First Amended Complaint to address the dismissed trade secret misappropriation claim against AutoNation, he must do so by January 24, 2018. Defendant's responsive pleading to a First Amended Complaint is due twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: January 5, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE