UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CARR,<br><br>        Plaintiff,<br><br>  v.<br><br>AUTONATION, INC., et al.<br><br>        Defendants. | No. 2:17-cv-01539-JAM-AC<br><br>**ORDER GRANTING DEFENDANT AUTONATION'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

    More than twenty years ago, Plaintiff James Carr ("Plaintiff" or "Carr") claims that he came up with a business plan (the "Business Plan") to transform the automobile-wrecking industry into a profitable system. Plaintiff presented the Business Plan to Defendant AutoNation, Inc. ("AutoNation") during face-to-face meetings and AutoNation subsequently told him that it was not interested in partnering with him. Plaintiff alleges that AutoNation, co-defendant LKQ Corporation ("LKQ"), and others then stole his ideas from the Business Plan to open a new, highly profitable company. After finding out about AutoNation's new company in 2015, Plaintiff initiated this lawsuit, alleging

1

Misappropriation of Trade Secrets and Breach of Contract Implied in Fact. Compl., ECF No. 1-2.[1]

In January 2018, this Court granted LKQ's motion to dismiss Plaintiff's sole claim for trade secret misappropriation against it. Order (the "MTD Order"), ECF No. 35. The Court also granted AutoNation's motion to dismiss Plaintiff's trade secret misappropriation claim and denied AutoNation's motion to dismiss Plaintiff's implied contract claim on statute of limitations grounds because questions of fact existed over whether Plaintiff should have discovered the claim earlier. See MTD Order.

AutoNation moves for judgment on the pleadings on Plaintiff's remaining claim for breach of implied contract. Mem., ECF No. 39. Plaintiff opposes. Opp., ECF No. 41. For the reasons explained below, the Court grants AutoNation's motion for judgment on the pleadings and dismisses Plaintiff's implied contract claim without prejudice.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff owned and operated an automobile-wrecking business in Placerville, California between 1985 and 1995. Compl. ¶ 2. Based on his experience and background as a college-educated certified public accountant, Plaintiff created the Business Plan to transform the automobile-wrecking industry into an efficient, interconnected, and highly profitable national system capable of synchronizing the supply of wrecked cars with the demand of

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for July 10, 2018. In deciding this motion, the Court takes as true all well-pleaded facts in the operative complaint.

2

recycled auto parts. Compl. ¶¶ 2-3. Around November 1995, Plaintiff sent letters to approximately 10 companies and individuals to gauge their interest in being a business partner and capital source. Compl. ¶ 4.

One of two respondents asked for the Business Plan and then, upon Plaintiff's request, returned the Business Plan after indicating they were not interested. Compl. ¶ 5. AutoNation, owned by well-known businessman Wayne Huizenga ("Huizenga"), was the other company that responded. Compl. ¶ 4. Specifically, between November 1995 and January 1996, Jeff Davis ("Davis") of AutoNation called Plaintiff to ask some follow-up questions and asked for the Business Plan. Compl. ¶¶ 6, 8. Plaintiff sent Davis the Business Plan, but without any confidentiality agreement or non-disclosure agreement. Compl. ¶¶ 8, 42. Davis then traveled to California to meet with Plaintiff in person and tour approximately five automobile wrecking yards throughout Northern California. Compl. ¶ 9. During the visit, Plaintiff spoke to Davis about general next steps, including what the nature of his future involvement would be if they decided to move forward. Id. Plaintiff claims that he also made clear to Davis that he "contemplated being compensated or otherwise involved should Huizenga, AutoNation, or any affiliates choose to move forward with the idea." Id.

After their visit, Davis called Plaintiff and told him that Huizenga and AutoNation were not interested in pursuing the Business Plan. Compl. ¶ 10. Plaintiff asked Davis to return the Business Plan and he did. Id. Then Plaintiff left the automobile-wrecking industry and moved on to other ventures. Id.

He did not follow developments in the automobile-wrecking industry and did not keep in touch with people in the industry. Id.

At a barbeque almost ten years later, Plaintiff told a new acquaintance who owned a Northern California auto parts recycler that Plaintiff once had a billion dollar business idea involving the automobile-wrecking industry. Compl. ¶ 11. He added that he pitched it to Huizenga and AutoNation. Id. The new acquaintance expressed shock and told Plaintiff that a company called LKQ had been formed with Huizenga's involvement and that it was tremendously successful. Id.

Plaintiff did further research on the internet to learn that Huizenga's business associate founded LKQ and that Huizenga and AutoNation were founding backers. Compl. ¶ 12. And Plaintiff discovered that AutoNation owned significant shares of LKQ until 2003. Compl. ¶ 17.

After completing his initial research, Plaintiff filed suit against Defendants AutoNation, Huizenga, Davis, and LKQ in El Dorado County Superior Court, alleging misappropriation of trade secrets against all Defendants and breach of contract implied in fact against AutoNation and Huizenga, seeking damages in excess of $87,000,000. Compl. ¶ 53. Defendants collectively removed the case to this Court under 28 U.S.C. § 1441. Not. of Removal, ECF No. 1. On September 19, 2017, the Court approved the parties' stipulation to dismiss Defendants Huizenga and Davis without prejudice. ECF No. 22.

///

///

II. OPINION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(c), after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. Proc. 12(c). Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Chavez v. U.S., 683 F.3d 1102, 1108 (9th Cir. 2012) (internal citation and quotation marks omitted).

The analysis under Rule 12(c) is substantially similar to the analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. Chavez, 683 F.3d at 1108 (internal citation and quotation marks omitted). As on a motion to dismiss under Rule 12(b)(6), a court must decide if a complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. (internal citation and quotation marks omitted). Mere conclusory statements in a complaint and formulaic recitations of the elements of a cause of action are not sufficient. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The Court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678, 682 (2009).

///

B. Pleading Of Breach Of Contract Implied In Fact

In its moving papers, AutoNation first argues that Plaintiff's breach of contract implied in fact claim should be dismissed because it is preempted by the California Uniform Trade Secrets Act ("CUTSA"). Mem. at 1-2. AutoNation also argues that Plaintiff's implied in fact contract claim is really a preempted equitable claim for breach of contract implied in law because he fails to allege an actual agreement between himself and Davis. Mem. at 10-11. Plaintiff counters by applying the pleading standard under Rule 12(b)(6) and argues that CUTSA does not preempt his adequately pleaded breach of contract implied in fact. Opp. at 8. Plaintiff cites Gunther-Wahl Prods. Inc. v. Mattel, Inc., 104 Cal. App. 4th 27, 29 (2002) in support of his contention that his allegations suffice to adequately plead an implied in fact contract claim.

In Gunther-Wahl, plaintiff Mr. Wahl gave a presentation to Mattel about his ideas for a television show and accompanying toy line that Mattel could license for compensation. 104 Cal. App. 4th at 29-30. Mr. Wahl, at Mattel's request, left his presentation materials with Mattel for further circulation and review. Id. at 30-31. Mr. Wahl had no non-disclosure agreement or other limitations in place before making his presentation and leaving his materials with Mattel. Id. Mattel and Mr. Wahl did not have an express understanding about whether and to what extent he would be compensated if Mattel used his idea. Id. After Mattel told Mr. Wahl that it was not interested in pursuing his idea, Mattel nonetheless developed toys that Mr. Wahl thought were based on his concepts. Id. at 32-33. At

trial, the jury was instructed that Mr. Wahl needed to have expressly conditioned the disclosure of his ideas on compensation for them. Id. at 34. The California Court of Appeal reversed and found this instruction to be a misstatement of the law on implied in fact contract. Id. at 42-43.

Plaintiff claims that, like Mr. Wahl, he gave clear expressions to AutoNation that he was offering to share his work product and expertise with AutoNation on the condition that he would be compensated "if AutoNation chose to develop a business based on Plaintiff's inputs." Opp. at 10. Plaintiff contends that in his initial communication to Huizenga, he "contemplated he would be the one building the company he envisioned." Id. (emphasis bolded and italicized in original). When Davis visited Plaintiff after receiving Plaintiff's business plan, Plaintiff "discussed his further involvement in the project with Mr. Davis." Id. Plaintiff further explains that "AutoNation's conduct in requesting the Business Plan and soliciting substantial further assistance from Mr. Carr and the surrounding context implied a contractual obligation to compensate Mr. Carr for any use AutoNation made of his assistance" that it breached by forming LKQ without Plaintiff. Opp. at 11.

In its reply, AutoNation contends that Plaintiff's breach of contract claim fails because an unconsummated business relationship does not form a contract to pay for an idea. Reply, ECF No. 44, at 2. AutoNation relies on Aliotti v. R Dakin & Co., 831 F.2d 898, 902 (9th Cir. 1987) to support its argument that an unconsummated business relationship does not form an implied-in-fact contract for the sale of an idea upon

7

which that relationship would have been premised. In Aliotti, plaintiff Ms. Aliotti showed the defendant many of her toy designs at a meeting to discuss defendant's acquisition of Ms. Aliotti's employer. 831 F.2d at 899. The parties did not discuss the defendant purchasing any specific designs. Id. After the defendant decided not to pursue a relationship with Ms. Aliotti's employer, it designed toys that resembled those Ms. Aliotti designed. Id. at 899-900.

The Ninth Circuit rejected Ms. Aliotti's argument that she had a viable claim for breach of implied in fact contract based on the defendant designing toys similar to hers after she disclosed her ideas to pursue a future relationship with the defendant that did not come to fruition. Aliotti, 831 F.2d at 902-03. The Ninth Circuit, in affirming the district court's grant of summary judgment for the defendant, explained that "no contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship." Id. at 903.

The Gunther-Wahl court distinguished Aliotti by emphasizing that Ms. Aliotti, unlike Mr. Wahl, made her presentation to the defendant not to sell her idea but to help persuade the defendant to buy her employer before it became bankrupt. Gunther-Wahl, 104 Cal. App. 4th at 42. The Gunther-Wahl court explained, Ms. Aliotti had expectation of payment for her business and not just for her designs. See id.

Here, similar to Ms. Aliotti and unlike Mr. Wahl, Plaintiff solicited AutoNation's financial support and presented his ideas

to pursue a future business relationship in which he would remain intimately involved rather than to simply have AutoNation purchase his ideas. As Defendant points out, this is clear from Plaintiff's own allegations and arguments. Reply at 2. Specifically, Plaintiff has made the following statements (either in argument or in his Complaint) indicating that he wanted a business relationship with AutoNation rather than a buyer for his ideas:

- I believe I can build a company from scratch [.] (Opp. at 3 (citing Compl. Exh. B));
- Plaintiff set out in search of a partner to provide the capital needed to bring his plan to fruition. (Compl. ¶ 4);
- Mr. Carr's letter summarized his business qualifications and expressly contemplated Mr. Carr's direct involvement in a company arising out of his concept. (Opp. at 3 (citing Compl. Exh. B)); and
- Mr. Carr spoke to Mr. Davis in general terms about next steps, including what the nature of his future involvement would be should AutoNation decide to move forward. (Opp. at 3 (citing Compl., ¶ 9)).

Aliotti mandates this Court dismiss claims for breach of implied contract where the alleged breach arises from an unconsummated business relationship rather than the failure to pay for a product or idea. 831 F.2d at 902-03. Accordingly, the Court must reject Plaintiff's claim for breach of implied contract because it is based on the disclosures of Plaintiff's plans in pursuit of a business relationship with AutoNation. Since the Court finds Plaintiff has failed to state a plausible implied in fact contract claim, it need not, and does not address AutoNation's other argument that Plaintiff's claim is an implied in law contract cause of action that is preempted by

CUTSA (an argument which Plaintiff labels as "immaterial" Opp. at 2).

   C.   Leave to Amend

   Courts have discretion to grant Rule 12(c) motions with leave to amend. Crosby v. Wells Fargo Bank, N.A., 42 F. Supp. 3d 1343, 1346 (C. D. Cal. 2014). Because the Court is not convinced Plaintiff cannot cure the deficiencies of his implied contract claim that are mentioned above, the Court will grant AutoNation's motion with leave to amend. See Holshouser v. County of Modoc, No. 2:14-cv-2552, 2015 WL 10381707 *3 (E.D. Cal. Oct. 1, 2015).

                          III.   ORDER

   For the reasons set forth above, the Court GRANTS AutoNation's motion for judgment on the pleadings and dismisses Plaintiff's sole remaining claim of breach of contract implied in fact WITH LEAVE TO AMEND. If Plaintiff elects to amend this claim, his First Amended Complaint shall be due within twenty days of this Order. AutoNation's responsive pleading is due twenty days thereafter. If Plaintiff elects not to file an Amended Complaint, the Complaint will be dismissed and the Clerk shall close this case

   IT IS SO ORDERED.

Dated: August 14, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE